KNUTE BAKKEN, Respondent, v. STATE OF NORTH DAKOTA, Doing Business as North Dakota Mill and Elevator Association, Appellant.

(219 N. W. 834.)

**State — actions lie against the state for personal injuries in operating mill as state Mill & Elevator Association.**

1. A civil action lies against the state of North Dakota, doing business as the North Dakota Mill and Elevator Association, to recover damages for personal injuries sustained through the negligence of the association in the operation of a mill.

**States — person entering mill to make audit under state board of auditors was "invitee," not trespasser.**

2. A person, who, under the direction of the state board of auditors, enters a mill operated by the North Dakota Mill and Elevator Association for the purpose of making an audit as required by law, has an implied invitation to enter such mill and is not a mere trespasser or licensee.

Opinion filed June 1, 1928.

Negligence, 29 Cyc. p. 457 n. 19.    States 36 Cyc. p. 882 n. 17.

Appeal from the District Court of Burleigh County, *Jansonius, J.* Defendant appeals from an order overruling a demurrer to the complaint.

Affirmed.

*George F. Shafer,* Attorney General, and *John Thorpe,* Assistant Attorney General, for appellant.

The state is immune from suits for torts when the state is engaged in governmental work. See annotation in 13 A.L.R. 1276.

"The care of highways and bridges devolves primarily upon the state. It is a governmental function, but for negligence in its performance, the state is not liable because the government is not liable to the individual unless made so by statutory or constitutional enactment." Vail v. Amenia, 4 N. D. 239, 59 N. W. 1092.

" 'Public purpose' as used by our Constitution is synonymous with 'governmental purpose.' " State v. Dixon, 213 Pac. 227.

"The term 'general welfare' includes the public health, as well as other things which are the special wards of the police power of the state." Des Moines Levee Dist. v. C. B. & Q. R. Co. 29 L.R.A.(N.S.) 543.

"Public welfare . . . is one great object of government to secure." Dagett v. Colgan, 28 Pac. 51.

"Police power includes regulations to insure in any respect such economic conditions as an advanced civilization of a highly complex character requires." 8 Cyc. 863; 12 C. J. 907.

"The public welfare embraces a variety of interests calling for public care and control. These are: 'The primary social interests of safety, order, and morals, economic interests and nonmaterial and political interests.'" State v. Hutchinson Ice Cream Co. 147 N. W. 195.

"State engaging in prosecution of private business enterprises does not waive its immunity from torts of its officers or agents employed in administration of the affairs of such enterprises." Rauschan v. Gilbert (Cal.) 253 Pac. 173.

*L. J. Palda, Jr., C. D. Aaker, C. E. Brace,* and *Robert W. Palda,* for respondent.

"An incorporated city or village voluntarily accepts a charter granting to it certain private or proprietary powers,—that is, powers to be exercised for the benefit of its citizens,—and a duty is thereby imposed upon them to properly exercise those powers without injury to others; and, for the negligent breach of that duty by their servants, they are liable to the injured party." Parks v. Northwestern University, 218 Ill. 381, 75 N. E. 991, 2 L.R.A.(N.S.) 556.

"In almost all affairs of purely local concern some indirect relation may be traced to a governmental cognizance. The test is not that of casual or incidental connection, if the duty in question is substantially one of local or corporate nature, the city cannot escape responsibility for its careful performance because it may in some general way also relate to the function of government." Denver v. Porter, 126 Fed. 288, 61 C. C. A. 168.

Municipal corporations proper, even in the absence of any express statute may be impliedly liable for torts of misfeasance or neglect of duty on the part of its officers and agents, while for the same or a similar wrong there is no such liability resting on quasi municipal

corporations.    Snider v. St. Paul, 51 Minn. 466, 53 N. W. 763, 18 L.R.A. 151.

When a state embarks in an enterprise such as is usually carried on by individual persons, it puts away its sovereign character and is subject to like regulations as persons engaged in like enterprises.    Western R. Co. v. Carlton, 28 Ga. 180.

"The fact that an agency is a public institution or functions as an agency of the sovereign power does not necessarily mean that its engagements are the direct engagements of the state and that no assault by action may be made upon the agency by reason of the inhibition against suing a state without its consent.    The state may prescribe that such agency shall be subject to action, or it may create such powers and obligations for such agency that the right of action against it is implied from the states created."    Sargent County v. State, 47 N. D. 561, 182 N. W. 270.

CHRISTIANSON, J.    This is an action to recover damages for alleged personal injuries.    The defendant interposed a demurrer to the complaint on the ground that it did not state facts sufficient to constitute a cause of action.    The demurrer was overruled and defendant appeals. The allegations of the complaint, the sufficiency of which is the sole question here, are as follows:

"(1) That the defendant is a corporation, organized and existing under and by virtue of the Constitution of the state of North Dakota, and the Constitution of the United States, as a municipal corporation; that said defendant, under and by virtue of the Laws of 1919, as passed by the legislature and approved by the governor, in the year 1919, did enter into an industrial program, a part of which was the operating and conducting of a mill in the city of Drake, McHenry county, North Dakota, and under and by virtue of said laws, made itself liable and subject to civil actions, whether based on contract or tort.

(2) That the defendant did, during the year 1920, and at all times mentioned in this amended complaint, conduct, operate, and manage a flour mill in the city of Drake, in the county of McHenry, and state of North Dakota.

(3) That during the year 1920, the state board of auditors were

engaged in making an audit and inventory of the said mill at Drake, under the authority of the laws of the state of North Dakota.

(4) That said plaintiff was employed under and by the direction of said state board of auditors in and about the making of said audit and inventory.

(5) That said defendant had, theretofore, in and about the conduct of said milling operations, negligently, wantonly, and in total disregard of the safety and security of those who might lawfully be in such storage room, piled in a storage room used in connection with the conduct and operation of said mill, certain sacks of flower and bran in sacks weighing from one hundred to one hundred forty pounds each, in large piles consisting of perpendicular columns of stacks, from twelve to sixteen feet high, without binding each such column or stack to those contiguous thereto, in any manner, so as to prevent the falling of such stacks upon slight disturbance; and that no one could from observation alone discern or determine that such sacks were so piled in a negligent manner, or that said columns or stacks of sacks were so liable to fall on slight disturbance.

(6) That in and about the performance of his duties under the employment aforesaid, said plaintiff was instructed by said defendant, by and through its manager and superintending officer, and by said state auditing board, by and through its agent, one Livedahl, to enter said storage room aforesaid and to engage in the labor of removing sacks of flour and bran from said storage room upon a hand truck.

(7) That said defendant, well knowing that said sacks of flour and bran were so negligently piled as aforesaid, and that it was, therefore, dangerous to work in said room among said columns of stacks of sacks, negligently failed to warn said plaintiff of the peril and danger of working among said columns and stacks of sacks.

(8) That said plaintiff did not know of the dangerous manner in which said sacks were piled, and could not readily ascertain such dangerous condition by observation; and being wholly unaware and ignorant of the danger aforesaid, and being to the knowledge of said defendant wholly unaccustomed to such labor, pursuant to said direction aforesaid, did enter said storage room aforesaid and therein engage in the labor of removing sacks of flour and bran therefrom upon a hand truck.

(9) That while said plaintiff was so laboring among said stacks of

sacks in said storage room as aforesaid, and while he was unaware of the dangers aforesaid, and wholly without warning of any kind to him, some of the sacks of flour and bran piled as aforesaid, fell upon said plaintiff, and he was thereby thrown against the wall and floor of said storage room with great force, and he thereby suffered great injury in and about his head and body, and broke one of the bones in his neck, and greatly lacerated and tore the muscles and ligaments in his neck and body, whereby plaintiff was confined to his home and bed for a long period of time, and was compelled to seek medical aid and assistance, and suffered great pain in and about his head, neck, shoulders, and chest, and is still suffering from such pain and is, as he verily believes, crippled for life.

(10) That plaintiff was, at the time of such injury aforesaid, of the age of forty-seven years, and was of especially good health and strong physically, and well able to perform any and all kinds of manual labor, and to earn thereby from $100 to $150 per month, but that by reason of said injuries aforesaid, he has been rendered unable to perform such work and labor, and still suffers pain and inconvenience from such injuries.

(11) That for medical services and assistance made necessary by reason of said injuries, said plaintiff was compelled to pay in the neighborhood of $500; and plaintiff has otherwise suffered damages by reason of the premises in the sum of $20,000."

The appellant contends that the complaint fails to state a cause of action for two reasons:

1. That the state of North Dakota doing business as the North Dakota Mill and Elevator Association is not liable for torts;

2. That the plaintiff, at the time of the accident, was merely a licensee and that the defendant owed him no duty.

These contentions will be considered in their order.

(1) In 1919 the legislative assembly enacted certain laws authorizing the state of North Dakota to engage in various business activities. Among the laws so enacted was one authorizing the state to engage in the business of manufacturing and marketing farm products, and for that purpose to "establish a system of warehouses, elevators, flour mills, factories, plants, machinery, and equipments, owned and operated by it under the name of the North Dakota Mill and Elevator Association."

Laws 1919, chap. 152, § 1. The legislature created the Industrial Commission (consisting of the governor, the attorney general and the commissioner of agriculture and labor) to conduct and manage the various industries, enterprises, and business projects on behalf of the state. Laws 1919, chap. 151. The North Dakota Mill and Elevator Association was placed under the management and control of the Industrial Commission. Laws 1919, chap. 152, § 2. In order to carry on the activities of the Mill and Elevator Association, the Industrial Commission was empowered to "purchase, lease, construct or otherwise acquire, warehouses, elevators, flour mills, factories, offices, plants, machinery, equipments and all things necessary incidental or convenient in the manufacturing and marketing of all kinds of raw and finished farm products within or without the state." Laws 1919, chap. 152, § 3. The Industrial Commission was further authorized to appoint a manager of the Mill and Elevator Association and to employ such agents and servants as in the judgment of the Commission the interests of the state might require. Laws 1919, chap. 152, § 4.

The act establishing the North Dakota Mill and Elevator Association provided:

*"Civil actions may be brought against the state of North Dakota on account of causes of action claimed to have arisen out of transactions connected with the operation of the association, upon condition that the provisions of this action are complied with.* In such actions the state shall be designated as 'the state of North Dakota, doing business as North Dakota Mill and Elevator Association,' and the service of process therein shall be made upon the manager of the association. Such actions may be brought in the same manner and shall be subject to the same provisions of law as other civil actions brought pursuant to the provisions of the Code of Civil Procedure. Such actions shall be brought, however, in the county where the association shall have its principal place of business, except as provided in §§ 7415, 7416 and 7418, Compiled Laws of North Dakota, 1913. The provisions of §§ 375 and 657 of the Compiled Laws of 1913 shall not apply to claims against the state affected by the provisions of this section." Laws 1925, chap. 163, § 8; § 368c8, Supplement to the 1913 Compiled Laws of North Dakota.

Sections 7415 and 7416, Comp. Laws 1913, relate to the place of

trial of certain actions affecting real property, and actions for the recovery of penalties or forfeitures and suits against public officers; § 7418 provides for the procedure on applications for a change of place of trial, and §§ 375 and 657 provide for the presentation of claims against the state to the state auditing board and prescribe the mode of verification and presentation of such claims.

Appellant concedes that suits may be instituted against the state for any cause of action claimed to have arisen out of transactions connected with the operation of the Mill and Elevator Association; but it contends that such suits are, nevertheless, subject to any defense on behalf of the state that was available to the state prior to the enactment of chapter 152, Laws 1919. In other words, appellant contends that the act establishing the Mill and Elevator Association created no new obligation or legal liability on the part of the state; that in operating a mill or elevator under chapter 152, supra, the state stands in precisely the same position as in the performance of any other governmental act or function and, hence, is not liable for negligence or other tort. Comp. Laws 1913, § 8175.

In our opinion this contention is not well-founded. The statute says:

"Civil actions may be brought against the state of North Dakota on account of causes of action claimed to have arisen out of transactions connected with the operation of the association. . . . Such actions . . . shall be subject to the same provisions of law as other civil actions brought pursuant to the provisions of the Code of Civil Procedure."

The statute contemplated that the Industrial Commission in directing the affairs of the North Dakota Mill and Elevator Association should establish and operate mills, elevators, and warehouses, and that it should employ such servants as became necessary to carry on the business in which the state would so engage. It goes without saying that persons performing labor or services for the state would be subjected to the same hazards as individuals performing like labor or services for private persons or concerns engaged in like industries. If appellant's contention is correct, then the state, in operating mills, elevators, and warehouses, would be exempt from the obligations which the laws of this state impose upon employers generally; and if the persons charged with the duty of managing and operating such in-

dustries on behalf of the state failed to take such steps as were necessary to afford to the laborers employed in such state industries the protection of the Workmen's Compensation Act, an employee injured in a state industry would be wholly without remedy. Such employee and any other person who might become injured through the negligence of the North Dakota Mill and Elevator Association, its agents, and servants, would be deprived of the right of redress which the law recognizes as existing under like circumstances against private persons or concerns engaged in like business.

Section 8175, Comp. Laws 1913, authorizes suits to be brought against the state "respecting the title to property, or arising upon contract." Section 8176, Comp. Laws 1913, provides that,

"No action upon a claim arising upon contract for the recovery of money only can be maintained against the state until the claim has been presented to the state auditor for allowance and allowance thereof refused."

As has been noted, § 8 of the act establishing the North Dakota Mill and Elevator Association expressly dispenses with the necessity of presenting claims to the board of audit as a condition precedent to the bringing of suit. If it had been the intention of the legislature that actions against the state growing out of the operation of the Mill and Elevator Association should be governed by the same rules as suits authorized against the state under § 8175, supra, and that such suits should in effect be restricted to those involving title to property or arising upon contract there would have been no necessity for inserting § 8 in the act. But it will be noted that § 8 does not restrict suits against the state, doing business as the North Dakota Mill and Elevator Association, to those involving title to property or arising upon contract. It specifically authorizes civil actions to be brought against the state of North Dakota "on account of causes of action claimed to have arisen out of *transactions connected with the operation of the association.*" It provides that the service of process in such actions "shall be made upon the manager of the association," and that "such actions . . . shall be subject to the same provisions of law as other civil actions brought pursuant to the Code of Civil Procedure." In our opinion these provisions evidence an intention on the part of the lawmakers that in all transactions connected with the operation of a

mill, elevator or other business establishment, operated by the North Dakota Mill and Elevator Association, the state doing business as such association, shall be subject to the same legal obligations and liabilities as are private persons or concerns engaged in similar industrial activities. In other words, we think it was the intention of the lawmakers to render the state of North Dakota, doing business as the North Dakota Mill and Elevator Association, subject to suit, in any transaction pertaining to the operation of such association for the breach of an obligation arising by operation of law as well as an obligation arising from contract, in any case where, in the same circumstances, a cause of action would exist against a private person or concern engaged in a similar business.

(2) Under the provisions of an initiated law adopted at the general election in 1920 (Laws 1921, p. 254) it was made the duty of the state board of auditors to examine the accounts, books, and vouchers of all the industrial institutions of the state, "and to take an account and ascertain the assets and liabilities . . . of all . . . industrial institutions of the state, at least twice in each year." According to the allegations of the complaint the plaintiff in this case was employed to assist in making such audit; and at the time of the injury, he was acting under the direction of the board of auditors of the state in making the audit required by law. Accordingly he was on the premises in the performance of a duty and was there by implied invitation. 29 Cyc. 457. The owner and occupier of the mill was under the duty of exercising reasonable or ordinary care and prudence to keep the premises safe for the benefit of the plaintiff and others who came there for the purpose of making such audit; and, if through a neglect of this duty, the plaintiff was injured, without negligence or fault of his own, he is entitled to be compensated for the injury so sustained.

It follows that the order appealed from is correct and must be affirmed. It is so ordered.

NUESSLE, Ch. J., and BIRDZELL, BURKE, and BURR, JJ., concur.